## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DEWAYNE A. JACKSON,**

|  |  |  |
|---|---|---|
| **Petitioner,** |  | **CASE NO. 2:10-cv-00043** |
|  |  | **CRIM. NO. 2:04-cr-144(1)** |
| **v.** |  | **JUDGE GRAHAM** |
|  |  | **MAGISTRATE JUDGE ABEL** |

**UNITED STATES OF AMERICA,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the instant motion, Respondent's return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts of this case as follows:

> Dewayne Jackson was one of five co-defendants originally charged in a 22-count indictment with conspiracy to violate the Hobbs Act, ten counts of armed robbery, and multiple firearms violations. Jackson went to trial on a second superceding indictment and was convicted of participating in the conspiracy and committing five armed robberies. He was also found guilty on five counts of use of a firearm in the commission of an offense and one count of being a felon in possession of a firearm. The specific details of the offenses are not relevant to this appeal. What is relevant concerns the district court's effort to supply Jackson with representation and the court's ruling on two defense objections to evidence introduced at trial.
>
> Jackson's retained attorney, Gary Tyack, appeared on his behalf at a detention hearing and filed pretrial motions to suppress items seized from a vehicle and during the search of a residence, as well as pretrial

identifications of Jackson made from a photo array shown to some of the robbery victims. At arraignment on the first superceding indictment, Tyack asked to withdraw from the case and was replaced by Kerry Donahue, who was appointed by the district court to represent the defendant. However, at the subsequent arraignment on the second superceding indictment, Jackson indicated that he was dissatisfied with his new counsel, claiming "a trust issue, a communication issue, and ... a lack of interest on [Donahue's] part" in Jackson's case. The transcript of the proceeding indicates a high level of frustration on the defendant's part, apparently stemming from Donahue's failure to visit him in the lock-up facility where he was detained, give him the latest version of the indictment, supply copies of the police report in addition to the "13 pages of discovery" that Jackson already had in his possession, and conduct an investigation to determine "[w]ho is writing these charges? ... Is there any witnesses to it? Can I question somebody?" Responding to the district judge's attempt to put his questions in context, Jackson said, "I don't want [Donahue] to represent me. I want to represent myself."

At this point, the district judge informed Jackson that he would address that issue after holding a hearing, presumably a *Faretta* hearing to determine whether the defendant was capable of defending himself and willing to waive his right to representation. That hearing was never held, however, undoubtedly because following the arraignment, the district court entered an order permitting Donahue to withdraw from the case and further providing:

At the arraignment, defendant made a request for the appointment of new counsel. When that request was not immediately granted, the defendant indicated that if new counsel were not appointed, he would then seek to represent himself. The record reflects that [Kerry Donahue] has been competently representing the defendant, and [although] the court has no reason to believe that his performance in this case has been inadequate in any way ... [i]n the interests of the effective administration of justice, the defendant's request for new counsel is hereby granted.

Within five days after Jackson's arraignment on the second superceding indictment, the court appointed Charles McKinney to represent the defendant. If Jackson had any difficulty with or opposition to his new counsel, there is nothing in the record to indicate it, either prior to the trial a little over three months later, during the five-day trial, or in post-trial proceedings.

2

The defendant did object on the first day of trial to the government's failure to produce in timely fashion certain cellular telephone call records, as well as a copy of a CD containing recordings of telephone calls that Jackson had made from a pay phone in the county jail where he was being held, claiming a discovery violation under Rule 16. The government explained that despite the timely issuance of a subpoena to Cingular, copies of the records were not received by the government until a few days before trial and were turned over to the defense the same day that they were received. The CD containing the defendant's recorded conversations on the jail telephone was made as part of an investigation concerning a plot hatched by Jackson to escape from custody while being transferred to or from the lock-up facility. While going over the lengthy recorded conversations, FBI agents discovered that Jackson had made self-incriminating statements concerning the charges in this case and turned the CD over to government prosecutors. It was not supplied to the defense for security reasons, but the prosecutor assured the court that there had been an automatic warning at the beginning of every telephone call made from the jail that the calls were being recorded. The prosecutor also informed the court that Rule 16 was not implicated because he planned to use the recorded conversations only as necessary for rebuttal and not as part of the government's case-in-chief. As it turned out, the recorded conversations were never played at trial or admitted into evidence; instead, the government used them to refresh Amy Crevison's memory and to impeach her on cross-examination. Moreover, the prosecutor indicated that of the voluminous cellular records, the only two calls that would be introduced were made among three of the co-defendants and, therefore, it did not appear that they would be prejudicial to defendant Jackson, if in fact they were introduced. Indeed, the record on appeal fails to show that the calls were introduced for any purpose during the trial.

The other evidentiary matter now raised by the defendant concerns the testimony of ATF agent David Taylor that the Smith & Wesson .357 revolver discovered in Jackson's possession was manufactured in Springfield, Massachusetts, and, therefore, that it had traveled in interstate commerce. When the prosecutor inquired about the agent's training and expertise as a firearms examiner, the defendant objected to the witness being called to testify as an expert witness on firearms, because the government had not given the defense prior notice that the witness would be called. In response, the prosecutor explained that Agent Taylor was familiar with .357 revolvers, had inspected the

3

> weapon in question earlier that day, had located the stamping on it that indicated its origin, and would be testifying based on personal knowledge, rather than offering an expert opinion. The district court ruled that the testimony was admissible.
>
> At the conclusion of the trial, Jackson was convicted on all 12 counts of the indictment specifically returned against him and was given an effective sentence of 120 years.

*United States v. Jackson*, 304 Fed.Appx. 424, unpublished, 2008 WL 5378015, at *1-3 (6th Cir. Dec. 23, 2008).  On appeal, Petitioner asserted that

> the district court committed error under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), by "ignoring [Jackson's] unequivocal demand to represent himself," that the court permitted the prosecution to introduce evidence and expert testimony in violation of Federal Rule of Criminal Procedure 16, and that the government failed to prove that the firearm attributed to Jackson had been shipped in interstate commerce.

*Id.* at *1.  On December 23, 2008, the Court of Appeals affirmed this Court's judgment.  *Id*.  On March 5, 2009, the mandate issued.  Doc. 173.

On January 15, 2010, Petitioner filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  He asserts as follows:

> 1. Ineffective counsel – a partial jury member.
>
> 2.  Ineffective counsel – trial court erred – constitutional rights violations – prosecutorial misconduct.
>
> 3.  Ineffective counsel – constitutional violations, prosecutorial misconduct.
>
> 4.  Ineffective counsel – in denying appellant a fair trial.
>
> 5.  Prosecutorial misconduct.

4

6. Confrontation Clause violation and violation of *Brady v. Maryland,* 373 U.S. 83 (1982).

7. Ineffective assistance of trial counsel for failing to challenge search warrant for Cingular Wireless information, and for failing to request proper jury instructions on Hobbs Act policy.

It is the position of the Respondent that Petitioner's claims are without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because the petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider

the other. *Strickland,* 466 U.S. at 697.

## CLAIM ONE

In claim one, Petitioner asserts he was denied effective assistance of counsel because his attorney failed to present to the Court, in support of a claim of juror bias, an unnamed individual who allegedly witnessed "a pregnant jury member jump over a four foot wall and run across a parking lot out of fear of [Petitioner's] family." *Petitio*n, at 9. In support of this claim, Petitioner refers to email correspondence with his attorney and to the trial transcript.[1]

In response, Respondent has provided an affidavit from Attorney Charles A. McKinney, Petitioner's defense counsel, which indicates in relevant part as follows:

> Mr. Jackson complains that the undersigned failed to bring to the attention of the court a witness who had noticed a pregnant juror jump a 4-foot wall to avoid Mr. Jackson's family.
>
> He took seriously this witness' presumption that the aforementioned juror's conduct might have evidenced [sic] a bias against Mr. Jackson.
>
> He spoke with the witness who indicated that there was no contact between that [] juror and Mr. Jackson's family.
>
> He then discussed the matter with a U.S. Marshall and other court personnel who assured him that the issue had been brought to the

---

[1] Petitioner has attached a copy of an apparent e-mail from Attorney McKinney to Amy Crevison, in which defense counsel indicates in relevant part:

> Regarding the witness statement, I spoke to the woman who saw the juror's reaction. She did not think it was a big deal and does not want to get involved any further.

*Exhibit 5 to Petition.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland,* 466 U.S. at 690.

attention of the Judge and that it would be considered at the start of the next proceeding.

Judge Graham called the juror separately and questioned her for cause.

All counsel had the opportunity to question the juror in Mr. Jackson's presence.

At the conclusion of the questioning, the undersigned was satisfied that the juror acted in an abundance of caution and sought to avoid contact with Mr. Jackson's family in compliance with her understanding of the Court's admonition to jurors to avoid contact with interested parties.

There were insufficient grounds to remove the juror from the panel for cause.

*Affidavit, Charles A. McKinney, Exhibit A to Return of Writ.*

The trial transcript indicates that, on April 6, 2005, the Assistant United States Attorney advised the Court that one of the jurors had expressed to a court security officer concern about violating the Court's order against having contact with any of the parties involved in the trial by leaving the courtroom while in close proximity to co-defendant Lisa Barrett and Barrett's family. *Trial Transcript*, at 626-27. Later that same morning, Attorney Merkle, who represented co-defendant Barrett stated:

I have spoken with the court security officer. . . . [H]e informed me that the juror. . . said... she] was uncomfortable because she thought she was violating the Court's admonition being in close proximity. And I. . . advised Ms. Barrett to try to keep a distance and to avoid contact and everything. But . . . it wasn't that she was uncomfortable because of anything anybody did. She just found herself in a circumstance that she thought she was violating the Court's admonition about not having contact with the parties, and that's what made her uncomfortable.

*Id*. at 7769-770. The following morning, the court security officer, Michael Gibson, confirmed that

Crystal Weiner, the juror being referred to, had not expressed any fear but rather concern about violating the Court's no-contact order.  *Id.*, at 774-75.  Petitioner's attorney requested the parties be permitted to question Weiner.  He had learned it apparently had been Petitioner's family, and not Barrett or Barrett's family, that had been exiting the courthouse in close proximity to Weiner.  *Id.*, at 779-80.[2]  The Court and all parties were provided the opportunity to question Weiner outside of the presence of the jury.  *Id.* at 976-984.  Weiner stated her sole concern involved whether she was violating the Court's no-contact order, because all parties in the case as well as jurors parked their vehicles in the same parking garage and exited the court at the same time.  She denied that she was unable to remain a fair and impartial juror.  *Id.* at 980.  She said no jurors had expressed any fear about being near the family of defendants in the parking garage or indicated they would be unable to remain as fair and impartial jurors.  *Id*. at 981.

Nothing in the record supports any basis for Weiner's removal from the jury.  Nothing in the record supports Petitioner's claim that an unnamed witness would have provided a basis for the removal of any juror.  Petitioner therefore has failed to establish ineffective assistance of counsel as defined under *Strickland*.

Claim one is without merit.


## CLAIM TWO

In claim two, Petitioner asserts  he was denied effective assistance of counsel because his attorney failed to object to admission of unauthenticated Cingular Wireless records used to link him

---

[2]  Respondent suggests that it was Barrett and her family;however, Barrett's attorney indicated Barrett had no family members attending the trial. *Trial Transcript*, at 780.

to the cell phone found at the scene of Kay Jewelers robbery. Petitioner asserts that admission of these records constituted improper hearsay violating the Confrontation Clause. Additionally, Petitioner contends that the government committed misconduct in failing to call Yousha Blanch to authenticate the phone records, rendering both the search warrant and identifications of Petitioner as the perpetrator invalid.

In response to these allegations, Attorney Charles McKinney indicates that he joined other defense counsel in objecting to introduction of Cingular Wireless records. The Court ruled that the Prosecutor could not introduce the records without an authenticating witness. Attorney McKinney did not call as a defense witness any person who could authenticate these records, because it would have been "contrary to Mr. Jackson's interest. . . to subpoena a witness to facilitate the admission of evidence harmful to Mr. Jackson." *Affidavit of Charles A. McKinney.*

Petitioner's underlying claims that admission of wireless phone records constituted inadmissable hearsay and violated the Confrontation Clause rendering the search warrant and identifications of Petitioner invalid should have been raised on direct appeal, but were not. These claims therefore cannot now be considered in these proceedings absent a showing of cause for Petitioner's failure to raise his claims on direct appeal and prejudice therefrom. *United States v. Frady*, 456 U.S. 152, 167-68 (1982) ("a collateral challenge may not do service for an appeal"); *Bousley v. United States,* 523 U.S. 614, 622 (1998). Petitioner cannot meet this standard here, as his claims are plainly without merit.

The record fails to reflect that improper admission of cell phone records. Detective Quigley testified that a cell phone had been left at the scene of the robbery of Kay Jewelers. *Trial Transcript*, at 1087. He acquired a search warrant to learn the name of the subscriber to the cell phone. *Id*. at

1089.  After reviewing information supplied by Cingular Wireless in response to the search warrant, he issued a warrant for the arrest of Dwayne Jackson.  *Id*. at 1090-91.  Defense witness Amy Crevison identified the cell phone left at the scene of the Kay Jewelers robbery as belonging to herself and Petitioner, with the associated phone number of 736-6085.  *Id*. at 1184-85.  Terrance Johnson  testified Petitioner had used the cell phone during the robbery of Kay Jewelers, acting as if he were talking to someone.  *Id*. at 379.  Petitioner's use of the cell phone also was demonstrated on the video of the robbery.  After robbing the jewelry store, Petitioner panicked because he could not find his cell phone and feared he had left it at the store.  Petitioner used Johnson's phone to call himself to make sure his phone was not in the car.  *Id*. at 391.  According to Johnson, Petitioner wanted to go back to Kay Jewelers to get his phone.  Johnson refused.  *Id*.  After Johnson and Petitioner divided up the proceeds of the Kay Jewelers robbery, Petitioner wanted to leave town.  He was worried about having lost his cell phone.  *Id*. at 394.  Johnson identified photographs taken during the robbery of Petitioner talking on his cell phone during the robbery.

Petitioner has failed to establish either that counsel acted unreasonably in failing to object to evidence regarding Petitioner's cell phone.  Even assuming, arguendo, improper admission of the Cingular Wireless records establishing Petitioner's ownership of the cell phone left at Kay Jewelers, any error was harmless, in view of other testimony and evidence establishing Petitioner's ownership and use of the phone during the robbery.  *See United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)(violation of the Confrontation Clause is subject to harmless error analysis)(citing *United States v. McGee*, 529 F.3d 691, 697 (6th Cir. 2008); *Couturier v. Vasbinder*, 385 Fed.Appx. 509, 2010 WL 2775636, at *515 (6th Cir. July 13, 2010)(when reviewing a claim for harmless error, the Court considers "the importance of the witness' testimony in the prosecution's case, whether the

10

testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case")(quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).  Here, the records were merely cumulative.  Petitioner therefore likewise cannot establish prejudice under *Strickland*.

Claim two is without merit.

## CLAIM FOUR

In claim four, Petitioner asserts that he was denied his right to self-representation because his attorney refused to permit him to request to represent himself at trial and lied to Petitioner about meetings he was having with the Court regarding a hearing on his request under *Faretta v. California*, 422 U.S. 806 (1975).  Petitioner states he was willing to risk getting shocked by the stun belt he was forced to wear in order to request that he be permitted to represent himself at trial, but defense counsel "orchestrated a ruse. . . with the help of [the]trial judge" by making objections during trial, going side-bar, and then telling Petitioner that the trial judge refused to permit anyone by attorneys to stand before Court.  *Petition*, at 14.  Petitioner contends he requested his attorney to file a motion to recuse the trial judge as biased, and believed that such a motion had been filed.[3]

---

[3]  In support of this claim, Petitioner refers, *inter alia*, to portions of the trial transcript indicating as follows:

MR. McKINNEY: Objection, Your Honor.

\*\*\*

(Bench conference out of the hearing of the jury)

COURT: Go ahead.

Defense counsel indicates as follows in response to this allegation:

> Mr. Jackson contends that the undersigned failed to raise the issue of his desire to represent himself and that the undersigned assured Mr. Jackson that Judge Graham would protect his rights.
>
> [Defense counsel] did inform the Court on the one occasion (prior to Closing Arguments) when Mr. Jackson indicated he wanted to representhimself. The Court allowed the undersigned time to discuss the matter with Mr. Jackson and the case proceeded after the issue was resolved in favor of the undersigned presenting the Closing Argument.
>
> [Defense counsel] does not recall making the statement that Judge

---

> MR. McKINNEY: Your Honor, I called an objection. I may have just asked for a recess.
>
> My client was talking to me and I couldn't hear what the question was regarding the Kay Jewelers.
>
> COURT: Well, we are going to have the reporter read it back for you.
>
> MR. McKINNEY: Thank you.
>
> COURT: Very well.
>
> (End of bench conference)
>
> (Question read)

*Trial Transcript,* at 839.

Petitioner additionally refers to Attorney McKinney's recross-examination of Kathryn Conti, wherein he tendered exhibits to the clerk. *Id.* at 669.

Neither of these portions of the trial transcript support Petitioner's claim. He also refers to an email exchange from Amy Crevison to Attorney McKinney in which she indicates in relevant part:

> Also, did you file the motion for an impartial Judge to hear Duwayne's case? I realize I've asked this question previously, however, you failed to answer it.

*Exhibit 5 to Petition.*

Graham would protect Mr. Jackson's rights.

He did not promise to file a motion to remove Judge Graham from the case as there was neither a factual nor a legal basis for doing so.

*Affidavit of Charles A. McKinney.*

The United States Court of Appeals for the Sixth Circuit rejected Petitioner's claim that he had been denied the right to represent himself at trial as follows:

> The remaining question on appeal concerns the defendant's insistence that he was deprived of his right, derived from the Sixth Amendment, to represent himself at trial, having informed the district judge at arraignment, "I am my own counsel." Rather than engage in a *Faretta* inquiry at that time, with several other co-defendants also awaiting arraignment and the district judge's scheduling order still to be announced, the judge indicated that there would be a hearing at a later date to determine whether Jackson could conduct his own defense. The district court apparently divined, as have we, that the defendant was motivated less by a desire to engage in self-representation and more by extreme dissatisfaction with Kerry Donahue personally-saying at one point, "I don't want to go to court with him"-and that, if asked, his actual preference would probably have been to have new counsel appointed, an action that the district judge took almost immediately.

> Perhaps, in light of Jackson's statements to the court proposing self-representation, it would have been preferable to hold a full-blown hearing, which was apparently the district court's initial intent. But, as we have held, *"Faretta* procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed *pro se." United States v. Cromer*, 389 F.3d 662, 682 (6th Cir.2004). Here, Jackson's statements may have been "clear" but, when viewed in context, they were not altogether "unequivocal." Relevant to Jackson's situation, we have also observed: "It is hornbook law that '[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel'." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir.1990) (citation omitted). In this case, even though a *Faretta* hearing never occurred, the district court did, in fact, inquire into the defendant's reasons for wishing to discharge his then attorney and then replaced Donahue at

13

virtually the first opportunity. In response to the district judge's action, Jackson made no further protestation, nor did he give any indication that he wished to proceed pro se - not at the suppression hearing that followed arraignment nor at trial. It is difficult, therefore, to conclude that Jackson "clearly and unequivocally asserted his right to proceed pro se."

Based on the facts in this record, we conclude that the post-arraignment acquiescence of the defendant in representation by his newly appointed attorney amounted to a waiver by conduct of the right to self-representation. It would certainly be unreasonable now to hold that the district court abused its discretion in failing to hold a *sua sponte Faretta* hearing once Donahue had been replaced by new counsel and there was no further objection from Jackson. Moreover, the factual circumstances distinguish this case both from that of *United States v. Bowker,* 372 F.3d 365 (6th Cir.), vac'd on other grounds, 543 U.S. 1182, 125 S.Ct. 1420, 161 L.Ed.2d 181 (2005), relied upon by the defendant, and from our recent opinion in *Moore v. Haviland,* 531 F.3d 393 (6th Cir.2008).

In the former case, defendant Bowker - then represented by counsel - sent the district judge a hand-written motion "for release of appointed attorney." *Bowker,* 372 F.3d at 385. In that motion, Bowker stated: "Now Comes Defendant, being first advised of his rights to an attorney, and does now knowingly, willingly, and intelligently waive his rights, to court-appointed counsel." *Id.* at 385-86. The district court apparently misconstrued the request for self-representation and entered an order denying "Defendant's pro se motion for new counsel." *Id.* at 386. Apparently, Bowker later had what the opinion describes as "a change of heart" and sent the court another written request, this time asking that his appointed lawyer be permitted to withdraw from the case "and that a new lawyer be appointed to represent" him. *Id.* The district court did, in fact, appoint new counsel for Bowker, who nevertheless appealed his conviction on the basis of the district court's purported denial of his right to self-representation. Affirming the conviction, we emphasized the need to make the appropriate inquiries when a defendant "knowingly and intelligently" waives his right to counsel and makes "a clear and unequivocal assertion of the right to self-representation." *Id.* But, we ultimately held that the district court's error in failing to do so in Bowker's case was rendered harmless by his later request for the appointment of new counsel. *Id.* If, in Jackson's case, there was a similar misinterpretation of the defendant's original request to proceed *pro se,* there was also a similar "change of heart" and an

14

implied waiver of the right of self-representation, as demonstrated by Jackson's acceptance of newly appointed counsel.

Moore is a habeas case that was filed in federal court, pursuant to 28 U.S.C. § 2254, following the petitioner's conviction in state court. The facts in *Moore* are easily distinguished from those in this case. In the state trial court, defendant Moore asserted his desire to represent himself forcefully and continuously, both in open court and by written motion. He was not only deprived of anything resembling a Faretta inquiry, but was affirmatively discouraged in the assertion of his right to self-representation by the trial judge, who responded to his request by saying: "[Y]ou can go pro se and be your own attorney, which is of course a very dubious action for anybody to take, and I personally, in 28 years as an officer of the court, have never seen anybody successful in that regard." *Moore,* 531 F.3d at 396. Moore's request to act as his own lawyer was denied and, unlike Bowker and Jackson, he did not manifest, in writing or by his conduct, any acquiescence in proceeding to trial while still represented by his original, repudiated counsel. We held that Moore had been wrongfully denied his right to self-representation, or at the very least a *Faretta* hearing, and affirmed the district court's grant of a conditional writ of habeas corpus. Because the context of the request in *Moore* differs so substantially from the circumstances in the case before us, we decline to apply the same analysis or to reach the same result here.

*United States v. Jackson*, 2008 WL 5378015, at *4-5.  "A § 2255 motion may not be used to relitigate an issue that was raised on [direct] appeal absent highly exceptional circumstances." *Dupont v. United States,* 76 F.3d 108, 110-111 (6th Cir.1996)(citing *United States v. Brown*, 62 F.3d 1418 (6th Cir.1995).  This  Court therefore will not now again address this allegation here.

Claim four is without merit.

## CLAIM SEVEN

In claim seven, Petitioner asserts he was denied effective assistance of counsel because his attorney failed to challenge the search warrant issued to Cingular Wireless on the basis that it was "faxed to the State of [Georgia] by a city police officer and issued by a State judge." *Petition,* at

20.  Petitioner contends that the warrant was invalid in the State of Georgia because it was not obtained in Georgia.  *Id*.

        Defense counsel indicates as follows in response to this allegation:

> A warrant was issued to Cingular which resulted in the police learning that Mr. Jackson was the subscriber of a cell phone found on the counter of the Kay Jewelers store which had recently been robbed.
>
> At the suppression hearing there appeared to be more than probable cause for the issuance of the warrant to Cingular inasmuch as (i) the surveillance video showed the robber entering the store with a cell phone to his ear; (ii) a cell phone was left on the counter following the robbery; and (iii) after inquiry it appeared the cell phone did not belong to any of the employees.

*Affidavit of Charles A. McKinney.*

        "Under federal law, when judging the validity of a warrant, the issue is whether the Fourth Amendment has been violated or, in other words, 'whether the [judicial officer] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992)(quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir.1985).  Further, even where a search warrant fails to comply with a State's procedural rules, the Fourth Amendment does not require evidence obtained therefrom to be excluded so long as "an officer acts in objective good faith in reliance on a search warrant obtained from a judge or magistrate, and the officer acts within the scope of the warrant." *United States v. Beasley*, 2000 WL 33725116, at *5 (W.D. Tenn. Dec. 19, 2000)(citing  *United States v. Leon,* 468 U.S. 897 (1984)).  Such were the circumstances here.  Petitioner has failed to establish ineffective assistance of counsel on this basis.

        Petitioner also asserts in claim seven that he was denied effective assistance of counsel

because his attorney failed to request a jury instruction on the Court properly instructed the jury on

the policy provisions contained in the United States Attorney's Manual, Title 9, Section 131.040.,

indicating that "[t]he robbery offense in 18 U.S.C. 1951 is to be utilized, as a general rule, only in

instances involving organized crime, gang activity, or wide ranging schemes."

This claim is plainly without merit. Petitioner does not allege, nor does the record reflect,

any error in the jury instructions issued by the Court.

Claim seven is without merit.

### PROSECUTORIAL MISCONDUCT

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow.

A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary

trial error in cases before it for habeas review. *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny

the petitioner fundamental fairness. *Id.*, at 642-43; *Martin v. Foltz*, 773 F.2d 711, 716-17 (6th

Cir.1985); *Angel v. Overberg*, 682 F.2dd 605, 607 (6th Cir.1982) (en banc).

> The Sixth Circuit has adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir.2002) (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir.2001)); *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir.2000). First, the Court must consider whether the prosecutor's conduct and remarks were improper. *See Macias*, 291 F.3d at 452 (citing same). Second, if the Court concludes that the remarks were improper, then the Court must apply the four-factor test set forth by the Sixth Circuit in United *States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir.1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due process rights. *Macias*, 291 F.3d at 452 (quoting Carter, 236 F.3d at 783). The four factors are: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or

accidentally made; and (4) whether the evidence against the defendant was strong. *See Macias*, 291 F.3d at 452 (quoting *Carter*, 236 F.3d at 783).

*Anderson v. United States,* 246 F.Supp.2d 758, 760-61 (E.D. Michigan 2003).

## CLAIM THREE

In claim three, Petitioner asserts that the prosecution unconstitutionally failed to disclose exculpatory evidence. Specifically, Petitioner contends that the prosecutor knowingly mislead the Court by failing to disclose that police lied about creating a photographic line-up including Petitioner's photograph based on information obtained through a search warrant faxed to Cingular Wireless. In support of this claim, Petitioner states that Detective Quigley faxed the warrant to Cingular Wireless on August 26, 2004, the day after the Kay Jewelers robbery. On August 27, 2004, Cingular Wireless faxed a response to the warrant; however, Gretchen Schroeder and Nora Anwar, employees of Kay Jewelers, identified Petitioner as the perpetrator from a photographic line-up on August 26, 2004, one day before police received the fax from Cingular Wireless indicating that Petitioner owned the cell phone found at the scene of the robbery. *Transcript, Hearing on Motion to Suppress*, at 59-60; 82-83. This claim is plainly without merit.

Detective Quigley explained that he prepared the photographic line-up on August 26, after speaking on the telephone to a representative from Cingular Wireless in regard to the search warrant. She provided Petitioner's name and identifying information on that same date. Thus, the record refutes Petitioner's allegation of prosecutorial misconduct.

Claim three is without merit.

## CLAIM FIVE

In claim five, Petitioner asserts that he was denied the effective assistance of counsel – and

18

denied a fair trial – based on prosecutorial misconduct and his attorney's failure to request dismissal of all charges involving the robbery of the Dollar General Store[4] and failure to object to the prosecutor's violation of *Brady v.Maryland*, 373 U.S. 83 (1963), and the Jenks Act. Specifically, Petitioner complains that the prosecutor failed to call as witnesses police who compiled photographic line-ups and attempted to obtain an identification of Petitioner by workers of the Dollar General Store August 18, 2004. Petitioner alleges that, because police attempted to obtain an identification of him as the perpetrator of the Dollar General Store robbery prior to the date authorities identified him as the owner of the cellular phone left at the Kay Jewelers robbery, the prosecutor and police lied about the manner in which they had identified him as a suspect. Moreover, Petitioner alleges that the prosecutor provided defense counsel with "someone else's photo array, attempting to pass it off as the array shown and signed by Mrs. Conti." *Petition*, at 15.

This claim is plainly without merit. Police did not need the information obtained from Cingular Wireless to create a photographic line-up including Petitioner's photograph to show to witnesses for identification, because a witness, David Richardson, observed two men enter the Jeep Cherokee used in the crime that was parked behind the store. When Richardson learned that the store had been robbed, he called police and gave them the license plate number and description of the vehicle. *Trial Transcript*, at 631. Kathryn Conti, who was working as the store manager on that date, was unable to identify Petitioner. *Id*. at 637, 648, 653.

Claim five is without merit.

## CLAIM SIX

---

[4] Petitioner is charged with the robbery of two different Dollar General stores. He refers, however, to the August 13, 2004, robbery of the Dollar General located at 4245 Maxway Avenue, Columbus Ohio.

In claim six, Petitioner alleges that the prosecutor failed to provide him with any discovery, including FBI and police reports "or any other relevant investigative material" and impeachment material. *Petition*, at 18-19. Again, this claim should have been raised on direct appeal, but was not. Thus, Petitioner must establish cause for failing to raise this claim on direct appeal as well as prejudice. *United States v. Frady*, 456 U.S. at 167-68; *Bousley v. United States,* 523 U.S. at 622. Petitioner cannot meet this standard here, as his claims are plainly without merit.

The record fails to support Petitioner's allegation. Defense counsel indicates "the Prosecutor provided discovery on a timely basis and [he] does not believe there was a failure to disclose exculpatory evidence." *Affidavit of Charles A. McKinney*.

Claim six is without merit.

**WHEREUPON** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's motion for extension of time to file a response to the return of writ (Doc. 194) is **DENIED,** as moot.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

s/Mark R. Abel
United States Magistrate Judge

21